CHARLES EDWARD TOWNSEND *v.* CITY OF HELENA

5309                                    424 S. W. 2d 856

Opinion delivered March 4, 1968
[Rehearing denied April 1, 1968.]

*Harold B. Anderson,* for appellant.

*Gene Raff, David Solomon* and *W. G. Dinning Jr.,* City Attorney, for appellee.

CARLETON HARRIS, Chief Justice. Charles Edward Townsend, appellant herein, was convicted in the Municipal Court of the city of Helena on four misdemeanor charges growing out of a disturbance on the main street of that city. These convictions were appealed to the Circuit Court of Phillips County, and the combined charges were tried on May 23, 1967, before a Phillips County jury. Townsend was found guilty of public drunkenness, disturbing the peace, resisting arrest, and assaulting an officer. On the first two counts, he was fined $25.00; on the third count he was fined $50.00 and given thirty days in the Helena jail, and on the final count was fined $75.00, and given six months in jail. From

the judgment entered on this verdict, appellant brings this appeal. For reversal, three points, all relating to the defense of insanity, are raised, the contention being that Townsend was insane at the time of the commission of the offenses.[1]

It is first asserted that the court erred in denying appellant's motion for an order directing the Superintendent of the Arkansas State Hospital to deliver to appellant's attorney and doctors all records on file with the hospital which pertained to appellant. The background of facts preceding this motion is as follows:

On January 6, 1966, eight or nine days after Townsend's Municipal Court convictions, appellant's mother, Beulah Ollway, called the constable of Clayburn Township, P. A. Mays, and, according to the constable, reported that her son was acting "peculiar," and was threatening bodily harm to himself; the mother desired that he be taken to the State Hospital. Mays, though obtaining no order of commitment, took appellant to the hospital where he was admitted. After Townsend stayed thirty days, the constable returned him to his home. This evidently occurred during the early part of February, 1966, but the matter of insanity was not mentioned until the filing of this motion, over a year later.[2] The motion reads as follows:

"That the defendant herein is charged with the misdemeanor. That the defendant voluntarily went to the

---

[1]There was no contention that he was insane at the time of trial.

[2]In March, 1966, appellant had filed a petition for removal to the United States District Court, alleging violation of his constitutional rights, but in the latter part of April of that year, the federal court ordered the cases remanded back to the Phillips County Circuit Court. An appeal was attempted to the United States Court of Appeals for The Eighth Circuit, but was subsequently dismissed. The proceedings in the federal courts probably account for the delay in bringing the cases to trial in the Circuit Court.

State Hospital for mental observation and he was returned as sane; that the defendant has entered a plea of insanity and it will be necessary to have access to the files of the State Hospital in order to properly prepare himself with the proof of insanity."[3]

The order directing the superintendent to deliver the records was then prayed for.

It was not error for the court to refuse to grant this motion. Townsend had not been committed to the hospital, but had gone on his own accord. There is no reason to believe that he could not have obtained the records himself, and certainly, without a showing that this could not be done, there was no reason for the court to order records of a private examination, *i. e.,* not made under court order, to be turned over to appellant's attorney and doctors.

It is next asserted that the "court erred in not committing the Appellant to Arkansas State Hospital when he pleaded not guilty by reason of Insanity as required by Arkansas Stat. 43-1301 [Repl. 1964]."[4] This statute provides that whenever a prosecution of any crime has been instituted in the Circuit Court by indictment or information,[5] and the defense of insanity is raised, "the judge shall postpone all other proceedings in the cause and shall forthwith commit the defendant to the Arkansas State Hospital for nervous diseases, where the defendant shall remain under observation for such time as the court shall direct, not exceeding one month."

[3]Though this motion states "that the defendant *has entered* a plea of insanity," it appears from the record that this was the first mention of such a plea.

[4]This section is part of Initiated Act No. 3, adopted by the people in 1936.

[5]Technically speaking, it is doubtful that the prosecution was "instituted" in the Circuit Court, since these were appeals from the Municipal Court; however, we treat the cases as though commenced in the Circuit Court.

However, in 1949, Act 256 was passed, such act comprising Ark. Stat. Ann. § 43-1304 through 1309 (Repl. 1964). Section 43-1304 provides the procedure to be followed when a defendant is informed against or indicted on a *felony* charge (rather than crime); the statute likewise largely places the question of whether a defendant should be committed within the discretion of the trial judge, rather than making the committal requirement mandatory.[6]

The court did not commit error. In the first place, the defendant was not charged with a felony. We are

---

[6]"Section 43-1304: Whenever a defendant has been held for trial by a magistrate, informed against or indicted on a felony charge and the defense of insanity is to be made an issue in his behalf, such defendant, or some person for him, shall file in the office of the clerk of the Circuit Court, a motion or request for an order of examination and the clerk shall immediately give notice in writing of the filing thereof to the Prosecuting Attorney or his deputy; and such motion or request shall be immediately presented to the Circuit Judge, who is hereby authorized to act upon the request during vacation of such court or during any session in another county. If the court has reason to believe that the defendant should be examined and observed by reason of the suggestion of the Prosecuting Attorney or other court official or those interested in the defendant, he may enter such order on his own motion; however, if the defendant be held for trial, informed against or indicted at a time more than thirty [30] days prior to the opening of the first term of court, after his having been legally charged, or prior to any adjourned day of said court at which an adjournment was made prior to such defendant's having been held for trial, informed against or indicted, and the issue be not raised more than thirty [30] days prior to said convening, the court shall exercise his discretion in the granting of an order for observation and examination of the defendant in the Arkansas Hospital for Nervous Diseases and shall not be required to enter an order committing the defendant for such observation and examination unless and until the defendant shall have been examined by two [2] reputable doctors of medicine appointed by the court and the court informed by them that there are reasonable grounds to believe the defendant insane. In such cases the examining fee for such doctors shall be Ten Dollars [$10.00] each, to be paid by the defendant, unless he shall be a pauper and shall have made and filed a pauper's oath, or unless said physicians shall report that there are reasonable grounds for believing the defendant insane, in which cases said fee shall be taxed as costs."

aware of no case, and none has been pointed out to us, in which even § 43-1301 has been construed to cover misdemeanors. But if that was the intent of the people, it certainly was changed by Act 256 of 1949,[7] for Section 7 of said act repeals all laws and parts of laws in conflict, and Act 256 definitely relates only to felonies.

In the next place, no motion or request for an order of examination was filed in the Circuit Court; nor was the court asked to appoint two doctors to examine appellant as a matter of determining if there were reasonable grounds to believe him insane.[8] Summarizing, we hold that the statutory requirements, relative to committing an accused to the State Hospital for observation, apply only where a defendant has been charged with a felony, and furthermore, that the court is given discretion in issuing such an order, as set forth in § 43-1304.

---

[7]Section 43-1301 was part of an initiated act, but the General Assembly in enacting Act 256 in 1949, passed the measure by a 2/3 vote. The vote in the Senate was 25 to 1, with 9 not voting, and the House vote was 67 to 10, with 23 not voting. This was sufficient to repeal any conflict. See Amendment No. 7 to the Arkansas Constitution.

[8]An interesting article appears in 11 Ark. L. R. 124-125, by Dr. Robert A. Leflar, Distinguished Professor of Law, and a former member of this court. Relative to this feature of the case, Dr. Leflar states:

"The only major change in this procedure, since 1936, was made by the 1949 legislature. There had come to be abuse of the compulsory feature of the examination requirement by sane defendants who, desiring postponement of their trials, would at the last minute plead insanity thus compelling the court, instead of going forward with trial, to send the defendant to the State Hospital for a useless examination. The 1949 enactment minimized this dilatory device by requiring that the defendant raise the issue by motion or request at least thirty days before the beginning of the next term of court, otherwise permitting the court in its discretion to commit the defendant for examination only if there be reasonable grounds for believing that the defendant might be insane, the court being allowed to appoint two reputable physicians to advise it in the matter. Since 1949 there appears to have been little abuse of the procedure."

Finally, it is urged that the court erred in instructing the jury that there was not sufficient evidence "to sustain a verdict of insanity."

There was no error in this instruction. What was the proof offered by appellant on the question of insanity? Creole Hall, a sister of Townsend, testified that she and her brother had formerly lived in Milwaukee, Wisconsin, and that appellant was admitted to the Milwaukee Health Center in 1960, staying there almost a year; he was then released to her custody, but was readmitted in 1962. Thereafter, he was again released, and returned to his home in Phillips County. The following statement was offered in evidence:

CHRIS J. BUSCAGLIA, M.D.
MEDICAL DIRECTOR    ex 2-573

TO WHOM IT MAY CONCERN:        June 7, 1962

RE: Charles Townsend
Hosp. No. 08-46-76

Mr. Charles Townsend was discharged from this hospital on June 7, 1962 and received a ten day supply of medication. Upon discharge he was on Thorazine mg 100 q.i.d.

Very truly yours,
Bernice C. Fabian
(Miss) Bernice C. Fabian
Psychiatric Social Worker

BCF: AW
Dictated by
Michael Yatso, M.D.
Staff Physician

This was the only documentary evidence offered and there was apparently no effort by appellant to obtain any records from this hospital, or to take the deposition of any of the people mentioned in the statement. It would seem that this could have been done without great difficulty or expense.

Certainly there is nothing in the statement, nor in the testimony of the sister that establishes that this man was insane at the time of the commission of the offenses of which he was convicted; to the contrary, it would appear that, if he had mental difficulties at the time of entering the Milwaukee hospital, his condition in June of 1962 was such that he was eligible for release.

It has been earlier pointed out that the transcript does not reflect that any effort was made by appellant to obtain his records from the Arkansas State Hospital; nor is it shown that he endeavored to take the deposition of any doctor therein; furthermore, the motion (earlier mentioned) filed on behalf of appellant sets out that he was "returned as sane," and there is nothing in the record to denote that the doctors found him otherwise when he voluntarily presented himself for admission. In fact he was only kept at the hospital for thirty days, which, in itself, somewhat indicates that no evidence of mental illness was found. The only other testimony that, in any way, touches upon the question of mental incompetence was that of appellant's mother. She stated that, "Here of late he would have trouble with his head. His head was giving him lots of trouble and I had tried different tablets for his pain and they didn't help him and he was talking about killing himself, that was why I had him put there [State Hospital]." She said that she had taken her son to a doctor (about three months before the Circuit Court trial), and the doctor had given Townsend "nerve tablets, rest tablets." The testimony was insufficient to raise the issue of insanity.

Finding no reversible error, the judgment is affirmed.